**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CARRIE ANDREWS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>STATE AUTO MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | CASE NO. 2:21-cv-05867-ALM-CMV<br><br>CHIEF JUDGE ALGENON L. MARBLEY<br><br>MAGISTRATE JUDGE VASCURA |

**MOTION FOR PRELIMINARY APPROVAL ORDER**

Plaintiff, Carrie Andrews, individually and on behalf of all others similarly situated, respectfully requests that the Court grant preliminary approval of the proposed class action settlement described in detail in the Class Action Settlement Agreement (the "Agreement") attached hereto as <u>Exhibit A</u> and exhibits attached thereto.

I. **CONCISE STATEMENT OF THE PRECISE RELIEF REQUESTED**

Plaintiff files this Motion requesting that the Court preliminarily approve a class action settlement, certify a settlement class, and direct that Notice as proposed be sent to the Settlement Class. Plaintiff respectfully requests that the Court enter an order of Preliminary Approval including, in substantially the same form, the content of the proposed Order attached to the Agreement as <u>Exhibit 5.</u>

The proposed preliminary approval order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. The parties

will submit a motion requesting final approval of the settlement, which would include the content of the draft final order set forth as Exhibit 4 to the Agreement, in advance of the fairness hearing.

## II. STATEMENT OF THE BASIS FOR THE REQUEST

The Parties reached the Settlement Agreement after over eighteen months of litigation and the Agreement is the product of substantial, contentious negotiations between the parties through mediation facilitated by mediator David P. Shouvlin. *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

The Parties reached a Settlement Agreement wherein Defendant agrees to pay to members of a Settlement Class who submit a valid and timely claim a payment of the calculated sales tax of the average local and state sales tax rate based on the garage location, or the average rate for the state, whichever is administratively feasible. As part of the Settlement, Defendant also agrees to pay such sales tax on total loss vehicles at the time of loss based on the Adjusted Vehicle Value of the vehicle, without requiring the policyholder to provide proof that the policyholder purchased a replacement vehicle. This constitutes 100% of the damages sought by Plaintiff in this case. Defendant has also agreed to separately pay (i) attorneys' fees and costs and Service Award approved by the Court and (ii) settlement administration costs. Moreover, the Parties have agreed to a Notice plan including direct individual Notice to all members of the Settlement Class.

The terms of the Settlement are fair and reasonable, and the form of Notice comports with the requirements of due process. Thus, this Court should preliminarily approve the Settlement and direct Notice to be issued to the Settlement Class, thereby allowing Settlement Class members to

evaluate the terms of the Settlement and decide for themselves whether to submit claims, request exclusion, or raise objections to the Settlement.

### III. MEMORANDUM OF LEGAL AUTHORITY

#### A. Terms of the Settlement

The settlement requires Defendant to do the following: (1) make payment to all Settlement Class members who submit a valid and timely claim of the calculated sales tax recorded in Defendant's internal records, or the average local and state sales tax rate, whichever is administratively feasible; (2) pay sales tax on total loss vehicles at the time of loss based on the Adjusted Vehicle Value of the vehicle, without requiring the policyholder to provide proof that the policyholder purchased a replacement vehicle; (3) separately pay attorneys' fees and costs in the amount equal to $900,000 (approximately 16% of total estimated compensable damages to the Settlement Class); (3) pay a Service Award of $5,000.00 to the named Plaintiff; and (4) pay the costs of Class Notice and Administration. *See generally* Exhibit A. Based on discovery adduced in this litigation, the Parties estimate the approximate total compensable damages secured by the Settlement to be $5.4 million. (Exhibit B ("Judkins Declaration") ¶ 28).

#### B. Certification of the Settlement Class for Settlement Purposes Is Warranted

Certification of the Settlement Class for settlement purposes is proper under Fed. R. Civ. P. 23(a), 23(b)(1) and (2). The proposed Settlement Class is defined as follows:

> All Insureds, under any Ohio, Illinois, and Missouri personal automobile insurance policy issued by State Auto and its subsidiaries or related insurance companies with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss, who made a first-party claim, which State Auto paid as a total loss, and whose claim was adjusted within the Class

3

Period,[1] who do not timely opt out from the Settlement Class (the "Settlement Class Members").

The Court may certify a class action for settlement purposes upon satisfaction of the requirements of Civ. R. 23. *See Amchem Products Inc. v. Windsor*, 521 U.S. 591, 609 (1997 Plaintiffs submit that certification of the proposed Settlement Classes is appropriate. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Id.* At 620. Respectfully, this Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1). Certification will allow Notice of the Settlement terms to issue to Settlement Class members; of their right to be heard on its fairness; of their right to opt-out or object; and of the Final Approval Hearing. *See* Manual for Compl. Lit., §§ 21.632, 21.633. Defendant does not oppose certification for settlement purposes. Each Fed. R. Civ. P. 23(a) and (b)(3) requirement is satisfied here for the Settlement Class. Although Defendant does not oppose certification of the Settlement class, and has agreed to settle the Settlement Class claims as set forth herein, Defendant does not concede that certification of a litigation class, as opposed to a settlement class, would be appropriate here, and the Parties have stipulated in the Agreement that this Agreement does not constitute a waiver of any defenses Defendant has to a litigated class if the proposed Agreement is not approved.

The numerosity requirement is satisfied for purposes of settlement because Defendant's records and spreadsheet data and a review of sample claims demonstrates there are likely over 7,406 members of the Settlement Class. (Judkins Decl. at ¶ 29). This easily satisfies the numerosity

---

[1] The Class Period is defined in the attached Settlement Agreement (Exhibit A). For Ohio, the period commencing December 21, 2013 through September 1, 2022, and for Illinois and Missouri, the period commencing December 21, 2011 through September 1, 2022.

4

requirement. *See generally Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement").

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must depend on a common contention of which "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (to satisfy commonality there "need only be one issue common to the class"). Here, the commonality requirement is satisfied because there is a common question of law concerning whether Defendant's Policy promise to include sales tax when making payment in money requires Defendant to pay sales tax without precondition or whether, instead, the total-loss regulations govern and permit Defendant to condition payment of sales tax only upon proof of replacement. This issue applies to all claims of the proposed Settlement Classes and every Settlement Class member, and its resolution would resolve an issue central, indeed dispositive, to every class member claim. (Judkins Decl. at ¶ 30).

Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the plaintiff's claim "arises from the same event or practice or course of conduct [as class members]" and are "based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1079. In other words, "as goes the claim of the named plaintiff"—favorably or unfavorably—"so go the claims of the class." *Sprague*, 133 F.3d at 399; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561-562 (6th Cir. 2007) (typicality met where representative's claim was premised on the same injury as class members). Here, the typicality requirement is satisfied because Plaintiff's claim is based on precisely the same legal

5

theory and "pattern or practice" as every Settlement Class Member: that Defendant owed ACV Sales Tax without precondition and, thus, Defendant's "pattern or practice" of, in the impacted states, conditioning payment of sales tax on proof of replacement constituted a breach of contract. (Judkins Decl. at ¶ 31). Further, Plaintiffs' claims are typical of the Class Members because Plaintiffs and every Class Member were insured under form Policies containing materially identical language—namely, the promise to "include" sales tax in money payments. (*Id.*).

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves two criteria: "1) the representative must have common interests with unnamed [class] members…and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543. The court should "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id*. Class Counsel's declaration demonstrates that Plaintiff adequately performed her duties as class representative. (Judkins Decl. at ¶ 33). There is no evidence Plaintiff possesses interests in conflict with the proposed Classes. (*Id*. at ¶ 34). The declaration also demonstrates that Class counsel competently represented the proposed class to date and are qualified to represent the settlement class. (*Id*. at ¶¶ 35–46). Further, Class Counsel has litigated other similar class actions with successful results and have been appointed Class Counsel by numerous courts. *Id*.

Rule 23 requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is established where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…predominate over those

6

issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. An absence of individual issues is not necessary. *See Young*, 693 F.3d at 544. Courts routinely find predominance is established where the claim turns on interpretation of uniform contract terms. *E.g.*, *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 506 (6th Cir. 2019) ("Breach of contract claims arising out of a standardized, form contract ordinarily are suitable for class certification…"). Here, the common question—whether Defendant's form Policy requires payment of ACV Sales Tax without precondition—predominates over any individual question. Essentially, Plaintiff contends, and Defendant does not dispute, for purposes of certification of a settlement class only, the only "individual" question, such as it is, concerns the amount of damages to which Class Members are entitled, which does not preclude a finding of predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016) (noting the "black-letter rule" that individual questions of damages do not predominate over common questions of liability).

As to the superiority factor, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. To determine if class-wide adjudication is proper, courts consider: (A) the interest in individually controlling prosecution; (B) whether other litigation has commenced; (C) the desirability of concentrating litigation; and (D) manageability. *Beattie*, 511 F.3d at 564. Here, common issues are central to the litigation and the individual damages, on average, are less than $1,000.00 per class member, which easily satisfies the first prong of the superiority analysis. *See generally Chapman v. Tristar Prods.*, No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 61767, at *16 (N.D. Oh. Apr. 24, 2017) ("The most compelling rationale for finding superiority in a class action is the existence of a negative value suit, which is where the costs of enforcement in an individual action would exceed the expected individual recovery"). The remaining prongs also favor class treatment: no action was "already commenced"

by any member of the class, it is desirable and efficient to concentrate Class Members' identical claims in this forum, and Plaintiffs are unaware of any difficulties in the management of this Settlement. (Judkins Decl. at ¶ 32).

For these reasons, certification of the Settlement Class is appropriate.

### C. Preliminary Approval is Warranted

There is a strong federal policy "favoring settlement of class actions." *UAW v. General Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007). Preliminary approval—which simply permits Notice of the settlement to be provided to the Class—is a relatively limited inquiry where the court's role is to "evaluate whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612, 2012 U.S. Dist. LEXIS 4818, at *2 (W.D. Ky. Jan. 17, 2012) (cleaned up). These requirements are readily satisfied here, as demonstrated above and in the exhibits hereto.

As will be set forth in greater detail in the Motion for Final Approval, the Fed. R. Civ. P. 23(e) factors all favor approval. *See generally Cook*, 2020 U.S. Dist. LEXIS 111956, at *16-17 (explaining that Rule 23 was amended to add factors relevant to approval of class settlements, which was intended to highlight the "core concerns" of Rule 23, but not to displace factors prescribed by appellate courts). The factors outlined in *UAW*, 497 F.3d at 631—which remain relevant to the analysis—also favor approval.

#### 1. The Rule 23 Threshold Favor Approval

Fed. R. Civ. P. 23(e)(2) contains two threshold procedural requirements: adequate representation and arms-length negotiations. Both favor preliminary approval here.

8

The adequate representation analysis under Rule 23(e) "is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18. This overlaps with one of the *UAW* factors, i.e., "the amount of discovery engaged in by the parties[.]" 497 F.3d at 631. Here, Plaintiff engaged in over eighteen months of litigation and had engaged in significant discovery prior to reaching settlement. (Judkins Decl. at ¶ 33). For example, Plaintiff secured numerous documents and spreadsheet data for over 11,000 claims containing hundreds of thousands of data inputs. (*Id.* ¶ 12). The parties also fully briefed the motion to dismiss. Moreover, the undersigned have litigated numerous similar class actions and have detailed knowledge about the strengths and weaknesses of the claims. (*Id.* at ¶ 41). The Rule 23 adequate representation factor and the *UAW* "amount of discovery" factor both clearly favor preliminary approval. *See generally Satterly v. Airstream, Inc.*, 2020 U.S. Dist. LEXIS 210868, at *16-17 (S.D. Oh. Sep. 25, 2020) (that plaintiffs had "exchanged written discovery and relevant information, engaged in further independent investigation, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits" militated in favor of approving a class settlement).

As for the second procedural factor, settlement was reached only with the assistance of David P. Shouvlin, an experienced and well-respected mediator. (Judkins Decl. at ¶¶ 17). The negotiations were unquestionably conducted at arms' length. Moreover, the Parties extensively litigated numerous issues, including fully briefing the dispositive motion to dismiss. Thus, the Rule 23 "arms' length" and the *UAW* "lack of fraud or collusion" factor both weigh in favor of preliminary approval. *See generally Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement

negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion"); *Bourne v. Ansara Rest. Grp., Inc.*, 2016 U.S. Dist. LEXIS 114399, at *6 (E.D. Mich. Aug. 26, 2016) (risk of collusion "is minimal" where parties fully briefed a motion to dismiss prior to reaching settlement).

### 2. The Rule 23(e) Substantive Factors Favor Approval

Fed. R. Civ. P. 23(e)(2)(C)-(D) prescribe the factors relevant to determining whether a proposed Settlement is substantively adequate: the costs and risk of trial and appeal, the method of claim distribution, the terms of attorneys' fees, and whether class members are treated equitably vis a vi each other.

Plaintiff believes the Agreement is beneficial to the Class for several reasons, as can be seen between a comparison of the likelihood of ultimate success and the relief secured through the settlement.[2] *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 130467, at *47-50 (N.D. Oh. Sep. 23, 2016) (analyzing the fairness of a proposed settlement by comparing the benefits provided by the settlement to the damages potentially available at trial in light of the odds of success); *see generally In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ("The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."). Although Plaintiff intends to explicate why the settlement is beneficial to the class in greater detail when moving for final approval, Plaintiff briefly notes that as set forth above, the likelihood of success

---

[2] Comparing (a) the benefits secured through settlement with (b) the benefits potentially available at trial divided by the chances of success is consistent both with Fed. R. Civ. P. 23(e)(2)(C)(i) and with two *UAW* factors, i.e., "the complexity, expense and likely duration of the litigation and the likelihood of success on the merits." 497 F.3d at 631 (cleaned up).

10

is uncertain. Both the Sixth and Seventh Circuits recently ruled against insureds alleging a similar theory of liability. Of particular note is that the Seventh Circuit adopted the argument Defendant makes in this litigation, i.e., that minimum regulatory requirements imposed by a state govern the relevant rights and obligations of an insurance policy issued in that state. It is Plaintiff's position that these decisions do not apply here where Defendant's insurance policy promises explicitly that it will include sales tax. But, at the very least, these opinions signify the substantial amount of risk inherent to continuing litigation rather than agreeing to the proposed Settlement. (Judkins Decl. at ¶¶ 15, 50).

Given this risk—and even absent it—the value of the Settlement is significant and impressive. First, the Settlement makes available damages, to those class members who submit a valid claim, in the amount of essentially 100% of the amount that could have been secured at a litigated judgment if Plaintiffs prevailed entirely on the claim. (Judkins Decl. at ¶ 21, 50) This level of success in obtaining benefits through a Settlement is extremely rare. *See Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *7 (S.D. Fla. Sep. 14, 2015) (settlements that "provide near-complete relief to class members on a claims-made basis" are an "extraordinary result"); *cf. In re Polyurethane Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 23482, at *5 (N.D. Ohio Feb. 26, 2015) (approving settlement that provided for 18% of the damages that could have been achieved at trial); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705, at *9 (E.D. Pa. May 19, 2005) (approving of settlement that provided for 11.4% of damages). Additionally, the Notice the Parties agree to use is robust and comprehensive. (Judkins Decl. at ¶ 27). Defendant agreed to send individual Notice by direct mail (including provisions to ensure any class member who changed addresses is located) and twice by email, thus providing significant assurance that Class Members will receive Notice. (Exhibit A); *see also*

11

*Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2019 U.S. Dist. LEXIS 212214, at *10 (S.D. Oh. Dec. 10, 2019) (noting the "robust notice" in determining whether to preliminarily approve a class settlement).

Second, the "method of processing class-member claims" is simple: The Claim form is pre-filled, postage pre-paid, and Class Members must simply attest to the information and send the Claim form back (or, if necessary, update their address). Agreement at Exhibit 1; *see Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *32-33 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."); *Manjunath A. Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC, 2013 U.S. Dist. LEXIS 203546, at *9 (W.D. Tenn. Nov. 22, 2013) (approving a settlement where "the claim form is extremely simple, includes a postage-paid, pre-addressed envelope and does not require Settlement Class Members to…provide any back-up documentation.").

Third, the terms of the attorneys' fees award weigh in favor of approval of the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The analysis here is "distinct from the Rule 23(h)" analysis, which addresses whether the attorneys' fees amount is reasonable on its own terms, and "instead addresses if and how the attorneys' fees impacted the terms of the Settlement." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *24. Here, the attorneys' fees amount did not impact the substantive Settlement terms at all—indeed, the parties did not even discuss attorneys' fees until after all other Settlement terms were finalized. (Judkins Decl. at ¶ 18). Further, Defendant has agreed to separately pay attorneys' fees and costs (in the amount approved by the Court), meaning that the attorneys' fee award will not decrease or impact in any way the payments to Settlement Class Members. *See Hicks v. State Farm Fire & Cas. Co.*, 2021 U.S. Dist. LEXIS 227148, at *13

(E.D. Ky. Nov. 8, 2021) (finding that Rule 23(e)(2)(C)(iii) favored settlement "particularly given the fact the fee will not reduce the amount the class members receive"). As such, Rule 23(e)(2)(C)(iii) favors approval of the proposed Settlement.

Finally, Class Members are clearly treated equitably, in that they will receive the same Notice, the same claim process, are agreeing to precisely the same release, and are entitled to the same benefits: sales tax calculated as a percentage of their vehicle's underlying value.[3]

As such, all the Rule 23(e)(2)(C)-(D) factors militate in favor of approval.

### 3. The Remaining UAW Factors Favor Approval

The *UAW* factors that are independent of the Rule 23 factors—i.e., the opinions of class counsel and the public interest, *see* 497 F.3d at 631—also support approval of the proposed Agreement.[4] Class Counsel possess extensive knowledge of the relative strengths and weaknesses of the underlying claim, and it is their reasoned judgment that the proposed Settlement is in the best interests of the Class. (Judkins Decl. at ¶¶ 50-51) *see also Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763, at *49-50 (N.D. Oh. Sep. 1, 2011) ("The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement."); *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, district courts should be hesitant to substitute its own judgment for that of counsel"). Moreover, "settlement fosters the goals of certainty, finality and

---

[3] While the Settlement provides for Plaintiff to petition for a Service Award of no more than $5,000.00, courts generally analyze Service Awards standing alone, and not within the rubric of Fed. R. Civ. P. 23(e)(2)(D). *See, e.g.*, *In re Sonic*, 2019 U.S. Dist. LEXIS 135573, at *16-18 (analyzing Service Awards separately from Rule 23(e)(2)(D)). Whether the proposed Service Awards are reasonable will be addressed in the forthcoming fee petition. *See also Shanahan*, 2021 U.S. Dist. LEXIS 50516, at *13 (approving Service Awards of $10,000.00 as reasonable).

[4] The final factor is the response from the Class, but that factor is irrelevant until the Hearing on Final Approval, after Notice is provided and Class Members are given the opportunity to opt out or object.

economy, which lie at the heart of our general preference for settlement of class actions." *Berry v. School Dist.*, 184 F.R.D. 93, 106 (W.D. Mich. 1998). And because of the valuable compensatory relief secured and the beneficial change in business practice, the Settlement "does its best to ensure that Defendants can continue to provide valuable service to Class Members in an atmosphere that will foster trust and confidence." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Oh. 1990).

For these reasons, all Rule 23(e) and *UAW* factors militate in favor of preliminary approval of the proposed Settlement.

### 4. The Claims-Made Structure Does Not Undermine Approval

The Settlement includes a claims-made structure, which does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *18 (S.D. Fla. Oct. 24, 2014). Defendant made clear it would not settle absent the claims-made structure. (Judkins Decl. at ¶ 48). And as courts have explained, whether a settlement compares favorably to a hypothetical settlement to which the parties did not agree is irrelevant. *See, e.g.*, *Casey v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 156553, at *6 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (citing *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")). The question is not whether a claims-made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether the Settlement is fair and reasonable on its own terms. *See*

*Casey*, 2014 U.S. Dist. LEXIS 156553 ("The Court does not have the authority to impose a preferred payment structure upon the settling parties").

The Agreement removes the risk that the Class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. Despite removing such risk, far from accepting a significant reduction in the potential damages, the Agreement provides, to those class members who submit a valid claim, nearly 100% of the total damages that could have been recovered at trial. (Judkins Decl. at ¶¶ 21, 47, 50). Further, it is worth noting that the proposed Settlement is not a quintessential claims-made settlement, where a defendant agrees to set aside an amount of money from which costs, fees, notice, administration, etc., are pulled, and agrees to pay class members a (discounted) amount of their damages up to the cap the defendant agreed to set aside. Instead, here, there is ***no cap on liability***—Defendants agreed to make whole and pay in full any Class Member who submits a claim. Courts are in wide agreement that such a structure is eminently fair to class members. *See Cotton v. Hinton*, 559 F.2d 1326, 1334 (5th Cir. 1977) (where a class settlement will make claimants whole, objections as to fairness were "meritless"); *Krell v. Prudential Ins. Co. of Am*, 148 F.3d 283, 323 (3d Cir. 1998) (affirming district court's finding that settlement which required submission of claims and made whole such claimants was "extraordinary relief").

For all such reasons, and as will be more fully explained in the Motion for Final Approval, Plaintiffs believe the Agreement is fair and reasonable to the Class.

Finally, for the convenience of the Court, below is a proposed preliminary schedule outlining the dates set forth in the Settlement Agreement, which comports with the Schedule outlined in the proposed Order preliminarily approving of the proposed Settlement, which is affixed as Exhibit 1 to the Settlement Agreement.

15

## PROPOSED PRELIMINARY SCHEDULE

| # | Action | Deadline |
|---|--------|----------|
| 1 | Defendant to provide Claims Administrator with the name and current or last-known address and email address of each potential Settlement Class Member and the date of loss. | Sixty (60) days of entry of the Preliminary Approval Order ("PAO") |
| 2 | Deadline for Settlement Administrator to send mailed notice and email notice | Ninety (90) days after entry of the PAO |
| 3 | Deadline for Settlement Class Members to opt-out of the Agreement | Thirty (30) days prior to the Final Approval Hearing |
| 4 | Deadline for submission of Notice of Intent to object to agreement | Thirty (30) days prior to the Final Approval Hearing |
| 5 | Deadline for Class Counsel to file their Motion for Final Approval of the Settlement, application for attorneys' fees, costs and expenses, and for a service award for Plaintiff. | Twenty (20) days prior to the Final Approval Hearing. |
| 6 | Deadline for Settlement Administrator to file proof of completion of Notice, along with complete and accurate Opt-Out list | Ten (10) days before Final Approval Hearing |
| 7 | Final Approval Hearing | On the date listed in the Order Preliminary Approving Class Settlement – approximately 130 days after any preliminary approval order is entered. |

## CONCLUSION

Plaintiff respectfully requests that the Court enter an order granting preliminary approval of the Proposed Settlement, setting a date and time for a final approval hearing, and ordering Notice to the Settlement Class in substantially the same form and content of the proposed Order attached as Exhibit 1 to the Agreement.

Dated April 17, 2023

Respectfully submitted,

*/s/ Amy L. Judkins*
Amy L. Judkins *(admitted pro hac vice)*
**NORMAND PLLC**
3165 McCrory Place, Suite 175
Orlando, FL 32803
Tel: (407) 603-6031
amy.judkins@normandpllc.com

Andrew J. Shamis
Ohio Bar No.: 0100846
**SHAMIS & GENTILE**
14 NE 1st Ave., Ste. 705
Miami, FL 33132
ashamis@shamisgentile.com

Scott Edelsberg *(admitted pro hac vice)*
Christopher Gold *(admitted pro hac vice)*
**EDELSBERG LAW P.A.**
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Tel: (305) 975-3320
scott@edelsberglaw.com
chris@edelsberglaw.com

***Attorneys for Plaintiff and Proposed Class***

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2023, a true and correct copy of the foregoing was filed and served via the Court's electronic filing system, thereby providing service upon all counsel of record, including:

Gregory R. Farkas (0069109)
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, OH 44114
Tel: (216) 515-1660
Fax: (216)515-1650
gfarkas@frantzward.com

Mark L. Hanover *(admitted pro hac vice)*
**DENTONS US LLP**
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606
Tel: (312) 876-8000
Fax: (312) 876-7934
mark.hanover@dentons.com

***Attorneys for Defendant***

                                              */s/ Amy L. Judkins*
                                              Amy L. Judkins *(admitted pro hac vice)*
                                              Attorney for Plaintiff