# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **CARRIE ANDREWS, *et al.*,** | : | |
| | : | **Case No. 2:21-CV-5867** |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Chelsea M. Vascura** |
| **STATE AUTO MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before this Court on the parties' Joint Motion for Final Approval of Class Action Settlement Agreement and Motion for Attorneys' Fees, Costs, and Service Award. (ECF Nos. 45; 46). For the following reasons, this Court **GRANTS** the parties' Motion for Final Approval of Class Action Settlement, **GRANTS** Class Counsel's Motion for Attorneys' Fees and Costs, and **GRANTS** Plaintiffs' Application for a Service Award to Plaintiff Andrews in the requested amount of $5,000.00. (ECF Nos. 45; 46).

## I.    BACKGROUND

### A. Factual Background

Plaintiff Carrie Andrews was insured under Defendant State Auto's automobile Form Policies for private passenger auto damage. (ECF No. 41, ¶ 1). Plaintiff's policy states that Defendant will cover "direct and accidental loss" for an insured vehicle. (ECF No. 12-1 at 8). For payment of loss, the Defendant "may pay for loss in money or repair or replace the damaged or stolen property." (*Id.* at 10). The policy also states, "[i]f we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property." (*Id.*).

At the relevant time, Andrews insured a 2014 Ford Focus under Defendant's insurance policy. (ECF No. 41, ¶ 14). On January 23, 2019, the insured vehicle sustained loss or damage, and Plaintiff filed a claim for property damage with Defendant. (*Id.*, ¶ 15). Defendant determined that Andrew's vehicle was a total loss and carried a base value of $9,496 and an adjusted value of $10,156 based on a base and adjusted vehicle valuation calculation comparing the vehicle to those of similar condition and mileage. (*Id.*, ¶¶ 16–17). Defendant paid Plaintiff Andrews a total of $9,656 based on the base vehicle value with a condition adjustment and reduction for the deductible but failed to pay any sales tax. (*Id.*, ¶ 18).

### B. Procedural Background

On February 24, 2023, Mediator David Shouvlin notified this Court that this matter was settled. (ECF No. 34). The parties were given until April 17, 2023 to file a Motion for Preliminary Approval of Class Settlement. (ECF No. 40). The Third Amended Complaint for this action, reflecting the current Plaintiff, was filed on April 12, 2023. (ECF No. 41). The Complaint reflects a breach of contract claim, alleging that the policy provisions require Defendant to pay sales tax on total loss cash claims. (*Id.*, ¶ 31). Plaintiff and other members of the proposed class allege that Defendant breached its automobile insurance policies by failing to include in payments for total loss vehicles an amount for sales tax unless the insured submitted proof of vehicle replacement. (ECF No. 45 at 3). Conversely, Defendant argues that it does not owe sales tax on total loss cash payments unless the insured submits proof of replacement. (ECF No. 42-2, ¶ 14).

On February 17, 2023, with the consent of Defendant, Plaintiff filed the Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 42). This Court granted that Motion on May 22, 2023, concluding that the Agreement would likely meet the final approval requirements of Federal Rule of Civil Procedure 23(e)(2). (ECF No. 43). The Notice Period then

2

commenced. On September 15, 2023, Plaintiff filed unopposed Motions for Final Settlement Approval, Attorneys Fees and Costs, and a Service Award. (ECF Nos. 45; 46). On October 5, 2023, this Court held a fairness hearing. (ECF No. 49). The parties represent that the Settlement is, in all respects, fair, adequate, and reasonable, and should be fully and finally approved.

### C. Overview of Settlement Terms

Pursuant to the Proposed Settlement, the Settlement Class is defined as:

> All Insureds, under any Ohio, Illinois, and Missouri personal automobile insurance policy issued by State Auto and its subsidiaries or related insurance companies with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss, who made a first-party claim, which State Auto paid as a total loss, and whose claim was adjusted within the Class Period,[1] who do not timely opt out from the Settlement Class (the "Settlement Class Members").

(ECF No. 42 at 4–5). The parties have agreed that Defendant will pay Settlement Class Members, who submit a valid and timely claim, a payment of the calculated sales tax of the average local and state sales tax rate based on the garage location, or the average rate for the state, whichever is administratively feasible. (*Id.* at 2). Defendant also agrees to pay such sales tax on total loss vehicles at the time of loss based on the Adjusted Vehicle Value of the loss vehicle, without the policyholder providing proof that the policyholder purchased a replacement vehicle and without regard to whether the loss vehicle was leased or owned. (*Id.*). Further, Defendant has agreed to change this practice and pay sales tax as part of the total-loss payment irrespective of proof of vehicle replacement. (ECF No. 45 at 3). With the exclusion of prejudgment interest, this represents nearly 100% of damages Plaintiff could have sought at trial. (*Id.* at 3). In exchange, Class Members agree to release Defendant from claims related to the action. (ECF No. 42-1, ¶¶ 98–99). Defendant

---

[1] The Class Period for Ohio is the period commencing December 21, 2013 through September 1, 2022, and for Illinois and Missouri, the period commencing December 21, 2011 through September 1, 2022.

also agrees to: (1) paying the cost of notice and settlement administration; (2) attorneys' fees up to $900,000; (3) mediation costs; and (4) a class representative award of up to $5,000, if approved by this Court. (ECF No. 42-1, ¶ 77). The parties estimate the approximate total compensable damages secured through settlement to be $5.6 million. (ECF No. 45 at 2, 4).

### D. Claims Process and Fairness Hearing

On June 23, 2023, Defendant provided the Class Administrator, Epiq, 13,199 names, addresses, and other relevant customer data for potential Settlement Class Members. (ECF No. 45-1, ¶ 5). Equip processed the names and addresses through the National Change of Address Database and updated any addresses. (*Id*., ¶ 8). Thereafter, on July 21, 2023, Epiq mailed 13,199 Notices and Claim Forms to potential Class Members. (*Id*., ¶ 7). As of September 12, 2023, Epiq mailed 14,001 Notices, including remails, and 1,827 were returned undeliverable. (*Id*., ¶ 10). This results in an 87% deliverable rate of the Class List. (*Id.*). Epiq also indicated that no later than September 21, 2023, it would mail and email reminders to all Class Members who have yet to submit a Claim Form. (*Id.*, ¶ 11).

On July 21, 2023, Epiq established a website to provide information and important documents, such as the Claim Form to the Class Members. (*Id*., ¶ 12). While there is an option to mail the Claim Form, the website allows potential Class Members to file a claim digitally. (*Id.*). As of September 12, 2023, the website was accessed by 1,168 unique visitors and 3,592 times. (*Id*., ¶ 13). On July 21, 2023, Epiq established and continues to maintain a toll-free number to provide information to potential Class Members. (*Id.*, ¶ 14). As of September 12, 2023, the number had received 103 calls. (*Id.*, ¶ 15). The Notice advised Class Members that the opt out and objection deadline was September 5, 2023, and as of September 12, 2023, Epiq had received no requests for exclusion or objection. (*Id*., ¶ 16).

Class Members were provided pre-paid postage to return the Claim Forms. (ECF No. 45 at 5). For the convenience of Class Members, Defendant pre-filled information on the claim forms, and Class Members that file a Claim Form need only confirm the prefilled information is correct before mailing or submitting the Form electronically. (*Id.*).

## II.    LAW & ANALYSIS

### A.  Final Certification and Approval

This Court has already certified the Rule 23 Settlement Class (ECF No. 43) and finds nothing has changed regarding the appropriateness of certification.

### B.  Sufficiency of Notice

In class actions certified under Rule 23(a) and (b)(3), notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Rule 23(e) specifies that no class action may be settled, dismissed, or compromised without court approval, preceded by notice to class members. Fed. R. Civ. P. 23(e). Rule 23(c)(2) requires that notice to the class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*, 497 F.3d 615, 629–30 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the Settlement Administrator issued notice to Class Members via mail and email, after performing a National Change of Address Registry search to ensure increased accuracy of delivery. (ECF Nos. 45 at 5; 45-1, ¶ 8). Second, Epiq placed the Notice on the settlement's website, provides for Notice upon request, and created and maintains a toll-free number to accommodate

inquiries. (*Id.*, ¶¶ 6–15). The Notice provides a full description of the nature of the action, proposed settlement, requested attorneys' fees, proposed service award, and date by which potential Class Members must object or opt out of the settlement. The Notice is also narrowly tailored to the claim alleged and details that by participating, Class Members do not release claims relating to the calculation of vehicle value under Defendant's policy apart from sales tax. (ECF No. 45 at 5).

The Court therefore finds that the Notice Program provided all members of the Settlement Class with fair and adequate notice of the terms of the Settlement, how to request exclusion or object, and the time and place of the Fairness Hearing. Finally, the Court finds the Notice was clearly designed to, and in fact did advise Settlement Class members of their rights and satisfied the requirements of Rule 23.

### C. Fairness, Reasonableness, and Adequacy

Before approving a settlement agreement, the Court must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). In determining whether the proposed settlement is fair, reasonable and adequate, the Court considers several factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631. In reviewing a proposed class action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

The court may limit the fairness hearing "to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of Health Maintenance Org. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (citations omitted). The court should not, at the fairness hearing, "determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams v. Yukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001). A court, however, "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "Parties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *Id.* at 635. Here, this Court finds that the proposed settlement is fair, adequate, and reasonable. All seven factors militate in favor of approval of the settlement.

The first factor—risk of fraud or collusion—is negligible, which favors settlement approval. In the order preliminarily approving the settlement agreement for the Defendants, this Court noted that the settlement was the result of "arms-length negotiations" and that there was "no reason to believe the settlement involves collusion." (ECF No. 42 at 5). The parties extensively litigated this matter and fully briefed motions to dismiss. (ECF Nos. 8; 16; 22; 23). The parties reached settlement with the assistance of Mediator David Shouvlin, who is an independent and experienced mediator. "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008). Therefore, there is no reason to believed that the settlement involved fraud or collusion, and this Court finds negotiations were conducted at arm's-length.

The second factor—the complexity, expense, and likely duration of the litigation—and the fourth factors—the likelihood of success on the merits—also weigh in favor of approving the settlement. This litigation has been ongoing for nearly two years. At this juncture, settlement would allow nearly 100% recovery of the Class Members' recoverable damages and avoids the significant risks of further litigation. This Court also appreciates that providing relief to class members now will eliminate any uncertainty or delay. Were the settlement not approved at this juncture, expenses would only continue to increase, making a future settlement where attorneys' fees may not threaten the class recovery less likely.

Additionally, this litigation addresses a complex, unsettled area of the law. Therefore, likelihood of success is not certain for either party. Defendant contends that the Sixth Circuit could conclude that Ohio Admin. Code § 3901-1-54(H)(7)(f), which governs the payment of sales tax by insurers, does not require insurers to pay sales tax unless the insured submits proof of replacement. (ECF No. 45 at 4). Defendant cites three federal courts of appeals that have addressed similar claims, and who ruled in favor of insurers and concluded that state regulations do not merely set forth the floor for liability but the governing standard for insurance liability. (*Id.* (citing *Singleton v. Elephant Ins. Co*., 953 F.3d 334 (5th Cir. 2020); *Sigler v. Geico Cas. Co*., 967 F.3d 658 (7th Cir. 2020); *Wilkerson v. Am. Family Ins. Co*., 997 F.3d 666 (6th Cir. 2021)). While Plaintiff argues that these cases are distinguishable, Plaintiff acknowledges the risk of proceeding under the current litigation landscape. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010) (explaining that "given the factual and legal complexity of the case, there is no guarantee that Plaintiffs would prevail at trial."). Given the important, disputed legal issues that remain unresolved at this juncture, factors two and four weigh in favor of settlement.

The third factor—the amount of discovery completed—strongly weighs in favor of approval. To ensure the "Plaintiff has 'had access to sufficient information to evaluate [her] case and to assess the adequacy of the proposed Settlement[],' the Court must consider the amount of discovery engaged in by the parties." *Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *5 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2005)). The parties have engaged in significant fact discovery, including Plaintiff securing numerous documents and spreadsheet data for over "11,000 claims containing hundreds of thousands of data inputs." (ECF No. 45 at 11).

The fifth factor—the opinions of class counsel and class representative—also weighs in favor of approval. Class Counsel has significant experience in national class actions, including against Esurance, and supports the Settlement Agreement. (*Id.*); *see also In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (giving weight to the recommendation of experienced and professional trial counsel). Likewise, the Named Plaintiff and Class Representative, Carrie Andrews, also supports the settlement agreement.

Sixth, in determining whether to approve a settlement, the Court must take into account the objections, if any, raised by Class Members and absent Class Members. As discussed above, Notice of this Settlement was issued in a manner consistent with due process and Rule 23. Settlement Class members had an opportunity to object and be heard. No Class Member objected or opted out. Because "[a] relatively small number of class members who object is an indication of a settlement's fairness" *see Brotherton v. Cleveland*, 141 F.Supp.2d 894, 906 (S.D. Ohio 2001), the absence of any objections means this factor weighs in favor of approval of the settlement.

Finally, the public interest weighs in favor of approval of the settlement. The public has an interest in the settlement of class action litigation to end "potentially long and protracted

litigation." *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *8 (S.D. Ohio May 30, 2012). The public interest is served where a settlement "provides relief to the class members, avoids further litigation, and frees the Court's judicial resources." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *3 (S.D. Ohio Jan. 18, 2019).

It is also this Court's responsibility "to ensure that the distribution of the settlement proceeds is equitable." *Dillworth*, 2010 WL 776933, at *6 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). The Settlement Agreement treats the Class Members equitably relative to each other, as no one reward is impacted by the value of another. Because the average expected damage award to each Class Member is below $1,000, this settlement is particularly valuable to Class Members who would be unable to afford independent litigation.

### D. Attorneys' Fees and Service Award

#### 1. Attorneys' Fees

A court is authorized to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). An award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). There are two methods for determining whether a fee is reasonable: the percentage-of-the-fund method and the lodestar method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09-cv-1608, 2010 WL 2490989, at *8 (N.D. Ohio Jun. 15, 2010) (approving attorneys' fees in the amount of one-third of the

settlement fund). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed*, 179 F.3d at 471. Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Van Horn*, 436 F. App'x at 501. A district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.*

A district court analyzes the following factors in determining whether the fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

Because Defendant has agreed not to contest attorneys' fees and costs up to $900,000, Class Counsel argues that the fees proposed are appropriate under both the percentage-of-the-fund and lodestar calculation method. (ECF No. 46 at 5–9). Plaintiff's Counsel would receive attorneys' fees of $900,000, amounting to 13.8% of the projected $6.5 million in benefits[2] obtained by the Class Members. (ECF No. 46 at 5). The percentage-of-the-fund classification, however, is deceiving as the proposed attorneys' fees do not reduce the Class Members damage awards. Defendant agrees to pay nearly 100% of damages owed, other than prejudgment interest, to Class Members who were not paid or underpaid sales tax following a total vehicle loss claim. (*Id.*). This

---

[2] "When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class. Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the "benefit to class members," the attorney's fees and may include costs of administration)." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016).

amount far exceeds the amounts in other decisions in the Sixth Circuit, finding that a much lower percentage of recovery still provides a benefit to the Class Members. *See Dillworth*, 2010 WL 776933, at *8 (explaining that the average recovery in class actions is 7-11% of claimed damages). Because any award of attorneys' fees would be separate from the funds allotted for claims by Class Members, awarding the requested attorneys' fees would not diminish in any way the recovery of class members. Therefore, the Class Members will receive a substantial benefit, and factor one weighs in favor of granting the attorneys' fees requested.

Plaintiff's counsel notes that 572.1 hours have been billed in this matter for a cumulative lodestar of $366,928.50. (ECF No. 50 at 1; No. 50-1 at 3-4). Counsel has provided a list of the attorneys and staff on the matter, the hours expended by each, and their hourly rate.[3] (ECF No. 50-1 at 3-4). The Defendants do not dispute the hourly rate of Plaintiffs' counsel or that the number of hours sought is unreasonable. Because the Defendant has agreed to pay up to $900,000 in fees and costs, the $366,928.50 figure equates to a multiplier of 2.45. (ECF No. 42-1, ¶ 77; ECF No. 50 at 2). When evaluating the appropriate multiplier, a Court rewards a class counsel that "takes more risk, demonstrates superior quality, or achieves a greater settlement with a larger lodestar multiplier." *In re Cardinal Health Inc. Securities Litigation*, 528 F.Supp.2d 752, 761 (S.D. Ohio 2007). In fact, a contingent fee risk is considered by many courts to be the most significant factor in awarding a multiplier. *See e.g., In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F.Supp. 160, 164 (S.D. N.Y. 1089).

---

[3] The hourly rates for the Plaintiff's counsel are as follows:
Normand, PLLC: Shareholder, $795/hr; Partner, $600/hr; Associate, $550 and $500/hr; Paralegal, $195 and $175/hr; Legal Assistant, $95/hr.
Shamis & Gentile, P.A.: Partner, $750 and $650/hr; Paralegal, $225/hr
Edelsberg Law, P.A.: Partner, $750/hr
These rates were used to calculate the above lodestar.

Against this backdrop, while the multiplier may initially seem high, courts have found multipliers between one and five appropriate in complex class actions when calculating the lodestar. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (upholding district judge decision to apply multiplier of two, despite class counsel requesting a multiplier of three, because settlement only resulted in class members recovering 21% of their initial investment); *see also Bailey v. AK Steel Corp.,* No. 1:06-cv-0468, 2008 WL 553764, at *3 (S.D. Ohio 2008) (applying lodestar multiplier of 3.04 in ERISA class action); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794–95 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010) (finding lodestar multiplier of 1.3 appropriate in class action settlement in suit by consumers against insurance companies alleging the companies concealed availability of lower-priced policies because case was taken on a contingency fee basis, recovery for the class was 20% of total loss, and settlement would enjoin insurance companies from further wrongdoing which would benefit society at large); *see also* Newberg on Class Actions § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."); Stuart J. Logan, Dr. Jack Moshman & Beverly C. Moore, Jr., *Attorney Fee Awards in Common Fund Class Actions,* 24 Class Action Reports (Mar.–Apr. 2003) (summarizing the findings of these authors regarding multipliers between 1973 and 2003 and noting that the average effective multiplier across 1,120 cases was 3.89); *cf. In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (explaining that "[m]ost courts agree that the typical lodestar multiplier in a large post-PSLRA securities class actions ranges from 1.3 to 4.5)). Therefore, the proposed multiplier of 2.45 is reasonable.

Additionally, this settlement presents a unique situation in that the attorneys' fees are not deducted from Class Members' recovery. As discussed *supra*, the proposed attorneys' fee award

amounts to only 13.8% of the total class benefit. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (finding that Sixth Circuit considers attorney's fees and costs as part of the "total class benefit."). As compared to awards in similar cases, this percentage represents a reasonable fee award. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1053, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) (recognizing that fee awards in common fund cases typically range from 20% to 50% of the fund); *see also In re Telectronics*, 137 F.Supp.2d 1029, 1046 (S.D. Ohio 2001) (same); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (approving FDCPA class action fee award of 38% of the common fund). This factor therefore weighs in favor of granting the proposed fees under both the percentage-of-the-fund method and the lodestar method.

Third, Class Counsel took this case entirely on a contingency-fee basis, and therefore this factor weighs in favor of awarding the fees sought. In doing so, Plaintiff's Counsel "undertook the risk of not being compensated" at all. *O'Bryant v. Pillars Protection Servs., LLC*, No. 2:19-cv-1354, 2020 WL 7486712, at *6 (S.D. Ohio Dec. 17, 2020) (quoting *Kritzer*, 2012 WL 1945144, at *9). Class Counsel have made significant investments of time and have advanced costs but have received no compensation in this matter since the beginning of this litigation, which weighs in favor of granting an award of attorney fees. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011).

Fourth, society benefits when attorneys take on class actions that ensure "claimants with small claims may pool their claims and resources." *Waters v. Pizza to You, L.L.C.*, 2022 WL 3048376, at *5 (S.D. Ohio Aug. 2, 2022). Further, society has an interest in conserving federal judicial resources. Class Counsel's effort resulted in a substantial benefit for the Class members, many of whom "would not have been able or willing to pursue their claim individually, and many

14

would likely not even be aware they had a claim against Defendant." *Id.* Here, the Settlement allows individuals to recover nearly all the likely recoverable damages and frees up valuable judicial resources. Thus, the public interest factor favors the settlement.

As to the fifth factor, this litigation was complex, addresses an area of the law that is unsettled in the Sixth Circuit, and therefore merits a significant fee award. If no settlement is approved, this litigation would progress to trial and could involve post-trial motions and an appeal, before a benefit, if any can be achieved, is felt by the class.

Regarding the sixth factor, this Court also finds that the attorneys were highly skilled. Class Counsel have served as lead or co-lead counsel in numerous total-loss actions in federal and state courts throughout the country. Defense counsel is likewise highly skilled. Counsel from both sides have professionally and zealously represented the parties, and this factor weighs in favor of the proposed attorneys' fee award.

Therefore, this Court **GRANTS** Class Counsel's Motion Attorney's Fees and Costs in the amount of $900,000.

### 2. *Service Award*

Finally, the Court approves a $5,000 service award for Plaintiff. Neither class members nor Defendants object to the requested award. Courts recognize and grant "incentive awards [as] efficacious ways of encouraging member[s] of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hogan v. Cleveland Ave Rests. Inc.*, No. 2:15-CV-2883, 2019 WL 6715976, at *6 (S.D. Ohio Dec. 10, 2019) (quoting *Hadix v. Johnson*, 322 F. 3d 895, 897 (6th Cir. 2003)). Plaintiff argues that this award is warranted because the Plaintiff assumed substantial risk in advocating for the Class. Further, the proposed award is in line with other class action settlement service awards. *Kritzer*, 2012 WL 1945144, at *8 (finding

15

service payments of $2,500 each for six class representatives to be reasonable); *Swigart v. Fifth Third Bank*, No. 1-11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (approving service payments of $10,000 each to the two class representatives); *Rotuna v. West Customer Mgmt. Grp.*, LLC, No. 4:09-cv-1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving service award of $3,500 to a representative plaintiff where the litigation lasted one year); *Chrismon v. Meadow Greens Pizza*, No. 5:19-cv-155BO, 2020 WL 3790866, at *6 (listing pizza delivery driver cases granting a $10,000 service award for the named plaintiff). Additionally, the service award, like attorneys' fees will not reduce the award to other Class Members, so there is no concern that such an award would be to the detriment of the Class. Class Counsel represents that Plaintiff Andrews was involved in all aspects of litigation including investigation, mediation, and discovery requests. Accordingly, approval of the service payment is appropriate here.

### III. CONCLUSION

For the reasons set forth above, the parties' Motions for Final Approval of Class Action Settlement, Attorneys' Fees, Costs, and Service Award is **GRANTED**. (ECF Nos. 45; 46).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: October 25, 2023**

16